UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
    DERRICK BROWN,

                      Plaintiff,

                                          14-CV-188 (JPO)
             -v-

                                          OPINION AND ORDER

    THE CITY OF NEW YORK, *et al.*,

                      Defendants.
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        Plaintiff Derrick Brown, proceeding *pro se*, brings this action against the City of New York and several New York City Department of Correction Officers (collectively "the City"), alleging causes of action for violation of his constitutional rights under 42 U.S.C. § 1983. Specifically, Brown alleges that while he was detained on Rikers Island he was deprived of (1) his First Amendment right to receive mail; (2) his First Amendment right to the free exercise of religion; (3) his right of access to the law library; and (4) his right to social services. The City moves to dismiss Brown's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the City's motion is granted in part and denied in part.

**I.    Background**

        Brown was a pre-trial detainee on Rikers Island until he was transferred to New York State Custody after his criminal conviction. On January 2, 2014, he brought this lawsuit against several improperly-named defendants. Chief Judge Preska ordered him to amend his complaint to state more specifically the factual grounds undergirding his claims and to name proper defendants. (Dkt. No. 4.) On April 3, 2014, Brown filed an Amended Complaint in this action. (Dkt. No. 5.) Because he named several John and Jane Doe defendants in his Amended Complaint, the Court ordered the City to help him identify the proper Defendants pursuant to

*Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997). (Dkt. No. 8.) Brown amended his complaint again on June 12, 2014, to include allegations against Mrs. Bethea, Mrs. Sandy Valcin, and Mrs. Williams, all employees of the City and officers on Rikers Island. (Dkt. No. 13.)

## II.     Discussion

Brown specifically alleges (1) that his mail was delayed at least two months; (2) that he has been denied his right to see an Imam; (3) that the law library on Rikers Island was defective in failing to provide him certain requested motions and because of its general unreliability; and (4) that the social services on Rikers Island are inadequate. The City moves to dismiss[1] the Amended Complaint on the ground that Brown has not added sufficient detail to his original Complaint to comply with Judge Preska's order. (Dkt. No. 4.) For the reasons that follow, the City's motion is granted with respect to Brown's religious exercise, law library, and social services claims; the City's motion to dismiss Brown's mail delay claim is denied; and Brown is granted leave to amend his complaint to state a claim for denial of religious exercise.

### A.     Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392 (2d Cir. 2008) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] Brown's deadline to respond to the City's motion to dismiss was November 24, 2014. (Dkt. No. 19.) The Court has not received any submissions in response to the motion from Brown.

(2009). A court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160–61 (2d Cir. 2010). A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (alterations and internal quotation marks omitted).

A complaint filed *pro se* "must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks omitted). "[A] pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). However, a pro se litigant must nonetheless "plead facts sufficient to state a claim to relief that is plausible on its face." *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

### B. Mail

Brown alleges that he is "just receiving mail that was sent a month or two before" and that "the department"—specifically, Mrs. Bethea, a mail officer—is "keeping [his] mail." (Dkt. No. 5, Amended Complaint ("Complaint"), at 3.)[2]

Prison and jail inmates have a First Amendment right to send and receive mail. *Turner v. Safley*, 482 U.S. 78, 87 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989). Although jail officials may screen inmate mail and may prohibit certain publications, any restrictions must be "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 404 (quoting *Turner*, 482 U.S. at 89). In general, legal mail is more closely protected by the First Amendment than non-legal mail, *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003), but the latter remains

---

[2] Although Plaintiff has filed a subsequent Amended Complaint in this action, the Court treats both of the Amended Complaints as operative.

subject to the "reasonableness" standard of *Thornburgh*, 490 U.S. at 414. And although prison officials enjoy wide discretion in setting mail policy, "a reasonableness standard is not toothless." *Id.* at 414. Even restrictions wholly unrelated to the content or viewpoint of incoming and outgoing letters are invalid if they do not allow inmates reasonable access to their mail. *See, e.g.*, *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996).

The rule in *Thornburgh* applies to lengthy delays in mail delivery. "Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment." *Rhinehart v. Gomez*, No. C-95-0434-VRW, 1998 WL 118179, at *6 (N.D. Cal. Mar. 2, 1998) (citing *Antonelli* 81 F.3d at 1432). "Any practice or regulation that unduly delays an inmate's incoming mail must be reasonably related to legitimate penological interests." *Id.* (citing *Turner*, 482 U.S. at 89). But an isolated or short-term delay is not enough to state a claim. *See Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (allegations of relatively short-term, non-content-based disruption in delivery of inmate mail not enough to state First Amendment claim); *see also Bartolomeo v. Liburdi*, No. 97-0624-ML, 1999 WL 143097, at *3 (D.R.I. Feb. 4, 1999) (report and recommendation) ("Where mail delays are no more than infrequent episodes, and prompt attention is paid to complaints of missing or late mail, there is not a constitutional violation."); *Armstrong v. Lane*, 771 F. Supp. 943, 948 (C.D. Ill. 1991); *Alston v. Coughlin*, 668 F. Supp. 822, 847 (S.D.N.Y. 1987) (dismissing constitutional claim on basis of finding that mail delays are "no more than infrequent episodes"). Only an "inordinate" delay will trigger First Amended scrutiny. *Rhinehart*, 1998 WL 118179. But what constitutes an inordinate delay is context-specific. *See e.g., id.*, at *6 ("The court finds no evidence that defendants have withheld mail from plaintiff for an inordinate amount of time. For example, one such letter mailed on November 23, 1994, was received by plaintiff on December 7, 1994; such a delay is understandable given that it was sent over the Thanksgiving holidays.")

The City does not argue that a two-month delay is categorically too short to trigger the First Amendment.  Nor does it argue that such a delay is reasonably related to a legitimate penological interest.  Instead, the City contends that "[a]lthough Plaintiff now identifies a mail room employee in the caption of the Second Amended Complaint, he still does not, as directed by Chief Judge Preska, distinguish legal mail from regular mail, the former of which is afforded greater judicial protection." (Dkt. No. 21, Memorandum of Law in Support of Motion to Dismiss ("Memorandum"), at 6–7.)  Similarly, the City argues that because "[c]ourts also afford greater protection to outgoing mail" and because "Plaintiff complains about receiving mail late (rather than not having his mail sent), he still has not met the pleading standards noted previously by Chief Judge Preska, and this claim fails." (*Id.*)  The City offers no other arguments.

Although Brown's handwritten complaint is not a study in thoroughness or precision, and although it does not remedy several of the deficiencies noted by Chief Judge Preska, liberally construed it states sufficient factual content to make Brown's First Amendment mail claim plausible.  From the Amended Complaint, it is clear that Brown alleges that his mail is being delayed up to two months by Mrs. Bethea.  And "mail," as used in the Amended Complaint, could reasonably be read as plural, suggesting that several pieces of mail are delayed by up to two months.  *Contra Alston*, 668 F. Supp. at 847 ("no more than infrequent episodes . . . .").  Even assuming that Brown's mail was non-legal, he has pleaded that he suffered from a two-month delay in the delivery of his mail and that he has suffered this delay more than once.  He has pleaded that Mrs. Bethea is at least partially responsible for these delays.  The City has offered no contention that the delays are reasonably related to any legitimate penological goal.  Although what constitutes an inordinate mail delay is not well defined, the Court cannot conclude as a matter of law that one- or two-month delays are not inordinate.  The City's motion to dismiss Brown's First Amendment claim is, therefore, denied.

### C.    Free Exercise

Brown next alleges that he "practice[s] Islam . . . and has yet to see an Imam." (Complaint, at 3.)

In evaluating a free exercise claim under the First Amendment, courts must balance the plaintiff's constitutional rights against legitimate penological interests. *See Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). Prisoners' free exercise claims are "judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (internal quotation marks omitted) (analyzing prisoner free-exercise claims under the reasonableness standard of *Turner*, 482 U.S. at 89–91).

The City contends that Brown's religious exercise claims must be dismissed because he "does not identify the person who denied him access to an Imam, and this single allegation certainly does not implicate a policy or practice of the Department." (Memorandum, at 6.) As pleaded, the Amended Complaint is insufficiently specific to state a claim for denial of religious exercise. It is not clear if Brown *asked* to see an Imam and, if so, who denied that request. The City has no obligation affirmatively to determine the religious needs of its inmates. Brown, though, is granted leave to amend for the purpose of pleading specific facts regarding (1) any requests he made to see an Imam, and (2) who denied those requests.

### D.    Law Library/Legal Aid

Brown claims that the law library "doesn't have everything I ask for" (Complaint, at 3)—specifically certain "motions" that he requested, (*id.*)—and that his facility lacks a legal aid program.

The Supreme Court has emphasized that a prisoner claiming that a prison's legal facilities or services deny him access to the courts must do more than establish "that his prison's law

library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (noting that a healthy prisoner could not claim a constitutional violation on the ground that the prison infirmary is inadequate). A prisoner must allege that "the shortcomings of the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* Because Brown has not alleged that the library's deficiencies caused him any adverse legal result, his claim is dismissed.

Brown's claim that he did not have a lawyer is contradicted by other parts of his Amended Complaint in which he alleges that he could not "reach" his lawyer. (Complaint, at 3.) Because Brown has not pleaded any facts to suggest that prison officials had any role in his difficulties reaching his attorney or that the City denied him access to an attorney at a "critical stage," *United States v. Wade*, 388 U.S. 218, 237 (1967), Brown's claim is dismissed.

E.     **Social Services**

Finally, Brown alleges that the social services on Rikers Island were deficient or nonexistent. But jail inmates do not have a free-standing, affirmative constitutional right to social services. *See e.g.*, *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Brown's claim is therefore dismissed.

III.   **Conclusion**

For the foregoing reasons, the City's motion to dismiss Brown's Amended Complaint is GRANTED in part and DENIED in part. Brown's religious exercise, law library, and social services claims are dismissed; the City's motion to dismiss is denied with respect to Brown's mail delay claim. Brown is granted leave to file an amended complaint to state a claim for denial of his right to religious exercise. Any such amended complaint must be filed on or before March 13, 2015.

The Clerk of Court is directed to close the motion at docket number 20.

SO ORDERED.

Dated: January 29, 2015
      New York, New York

                                                  _____
                                                        J. PAUL OETKEN
                                               United States District Judge

Copy mailed to pro se party by chambers.